In the Matter of RICKY AA., an Infant. LEON AA. et al., Appellants; GISELLE BB., Respondent. (Proceeding No. 1.)

In the Matter of GISELLE BB., Respondent, v LEON AA. et al., Appellants, et al., Respondent. (Proceeding No. 2.)

Third Department, May 18, 1989

## APPEARANCES OF COUNSEL

*Brynteson & Eggleston (Jessica C. Brynteson* of counsel), for appellants.

*John J. La Boda, Jr.,* for Giselle BB., respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

On February 27, 1984, Ricky AA. was born to Giselle BB., then 15 years old; the mother and father of the child did not marry. Eleven months later, petitioners,[1] the child's paternal grandparents, were appointed the baby's guardians and took physical custody. Thereafter, they commenced proceeding No. 1 by petitioning for adoption of the child. On November 20, 1985, all parties appeared in Family Court, where an agreement of adoption and consent, irrevocable consents and hearing minutes were signed by the appropriate parties and Family Court. "Immediately thereafter", according to Family Court's decision, "the Court became concerned as to the voluntariness of [the mother's] consent absent the advice of counsel". Family Court appointed a Law Guardian and adjourned the matter to give the mother an opportunity to reconsider after conferring with the Law Guardian. Apparently due to the illness and subsequent death of the Law Guardian and appointment of a replacement, the case languished for some 2½ years, during which time the mother commenced proceeding No. 2 for custody of the child. On March 22, 1988, Family Court finally held a trial to determine the validity of the mother's consent.

At the hearing, the parties involved testified about the circumstances surrounding the mother's consent. Family Court determined that the consent was invalid because the mother did not understand the full import of her action, which was prompted by family pressure. Family Court concluded that the best interest of the child would be served if the child were returned to the mother. Accordingly, Family Court vacated the judicial consent, dismissed the adoption proceeding and granted custody to the mother. From the orders entered thereon, petitioners appeal.

---

1. Although these parties are petitioners in proceeding No. 1 and respondents in proceeding No. 2, we shall denominate them petitioners in this decision for convenience.

We reverse. Domestic Relations Law § 115-b[2] was enacted to bring finality and certainty to adoption proceedings *(Matter of Sarah K.,* 66 NY2d 223, 233-234, *cert denied sub nom. Kosher v Stamatis,* 475 US 1108). It specified that a judicial consent, which is one given in open court, became irrevocable if it recited that it was irrevocable, that no action or proceeding could be maintained for custody and that it became irrevocable upon execution or acknowledgment before a Judge or Surrogate (Domestic Relations Law § 115-b [former (1)]). It further required the court to inform the consenting party of the consequences of the consent (Domestic Relations Law § 115-b [former (2)]). Pursuant to this provision, "Where the consent is actually executed before the Family Court Judge * * * there is no revocation period at all" (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C115-b:3, at 507; *see, Matter of Sarah K., supra,* at 234). But the statute does permit actions or proceedings for fraud, duress or coercion in the execution or inducement of an adoption consent (Domestic Relations Law § 115-b [7] [formerly (4)]).

In this case, there is no dispute that on November 20, 1985, the mother and Family Court signed the adoption and consent agreement, irrevocable consent and hearing minutes after Family Court advised the mother of her rights in language she undoubtedly understood. This indicates that Family Court was satisfied that the mother, at that point in time, acted voluntarily and intelligently. In accordance with the statutory scheme and interpretive case law, designed to bring certainty and finality to adoption proceedings *(Matter of Sarah K., supra),* this judicial consent then became irrevocable subject only to claims of fraud, duress or coercion which the dissent agrees are not satisfactorily established herein. Under such circumstances, it is our view that the consent should have remained in effect and Family Court erred in vacating it, dismissing the adoption proceeding and awarding custody to the mother.

We recognize that much of the difficulty with this case

2. This statute has been amended (L 1986, ch 817, § 1) but the amendment is not applicable to consents, like the one at issue here, executed or acknowledged prior to its September 1, 1986 effective date (L 1986, ch 817, § 7). We reject petitioners' contention that Family Court's determination was erroneously based on the statute as amended for the passing reference to the statute as amended in Family Court's decision cannot be read as forming the basis of its decision.

results from there being no transcript of the November 20, 1985 proceedings so that we do not know exactly what transpired to alert Family Court to the mother's apparent misgivings or even when any such events occurred.[3] Family Court's explanation that it was alerted "immediately" after the mother's consent, at which point a Law Guardian was appointed, adds to the ambiguity since the record reveals that the Law Guardian was not appointed until November 22, 1985, two days after the mother's consent was given. We are adverse to disregard the clear dictate of the statute promoting finality and the undisputed evidence that the mother gave a judicially accepted irrevocable consent on the basis of facts that are not clearly established. Accordingly, we give effect to the mother's irrevocable consent and reverse the orders.

YESAWICH, JR., J. (dissenting). We respectfully dissent. A parent's consent to adoption cannot be recognized as such unless it is a knowing and voluntary acquiescence (see, People ex rel. Anonymous v Anonymous, 139 AD2d 189, 193). This is so even in the absence of fraud or duress, for it is the deliberative oversight of the court aimed at "assuring that the biological parent ha[s] made an informed, well-considered decision" (supra, at 193) that makes a judicial consent virtually unassailable. Family Court did not undertake this level of inquiry at the November 20, 1985 hearing until after the relevant documents had been completed and, unfortunately, did not complete it until almost three years later.

Unlike the majority, we are not so certain that the explanations the mother received prior to Family Court's acknowledgment of her consent were readily understood by her. Family Court certainly was not so convinced. In fact, the record indicates that this young mother, who was then in the eighth grade, having repeated three grades, and of marginal academic achievement in reading and English skills, gave only monosyllabic responses as the Family Court Judge reviewed and acknowledged the consent documents. Moments later, after this perfunctory review, Family Court engaged in the probing examination required to make a judgment as to the quality of the mother's consent. The court describes in its decision what happened next:

---

**3.** Considering the consequences attendant a judicial consent, the hearing should be on the record (see, Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C115-b:3, at 507), a procedure that would have avoided much of the uncertainty confronting us.

"Immediately thereafter, following further inquiry by the Court, it became apparent that the natural mother was unsure of her decision and the Court became concerned as to the voluntariness of her consent absent the advice of counsel. At this point, a law guardian was appointed * * * and the proceeding was adjourned to permit the law guardian and natural mother an opportunity to confer and reconsider the consent.

"Several adjournments followed as the result of the serious illness and subsequent death of the first law guardian after which a new law guardian was appointed. Following several more appearances and adjournments, the case was scheduled for trial on March 22, 1988 on the issue of the validity of the irrevocable consent signed by the natural mother."

After that hearing, at which the mother testified that once Family Court explained the adoption documents to her, she told the court, "Forget it. I don't want to go through with it.", Family Court concluded that the mother's consent was invalid because, unaided by counsel, the mother "did not comprehend the nature and finality of her acts", and that "family pressure, rather than a voluntary and intelligent desire led to the signing of the consent".

It is not without significance that the same Family Court Judge presided over both the November 20, 1985 consent proceeding and the March 22, 1988 hearing. Since the court not only took the testimony we are reviewing, but also had firsthand knowledge of the consent proceedings themselves, the court's assessment of the veracity of the individuals involved, the quality of the explanations given to the mother and the character of her consent is entitled to special deference. Given that the very Judge charged with insuring that the mother's consent was an informed and well-considered one tells us that it was not, there is neither necessity nor reason to rely upon the statutory presumption of irrevocability which proceeds from a duly executed or acknowledged consent. Clearly, if the court had found the consent unwitting prior to placing its imprimatur upon it, the court's decision would not now be questioned. To punish the mother because Family Court made its inquiry belatedly is to exalt form over substance in derogation of the common-law presumption favoring placement of a child with his natural parent (see, *People ex rel. Scarpetta v Spence-Chapin Adoption Serv.*, 28 NY2d 185, 192-194).

It has not escaped our notice that the child has been in petitioners' care and guardianship for the last four years, although during a considerable portion of that time the mother also resided with him. It is unfortunate for all involved that this matter was not resolved much sooner, but there is no indication that the onus for the delay rests with the mother or is other than systemic. Accordingly, we would affirm both orders.

CASEY and HARVEY, JJ., concur with MAHONEY, P. J.; WEISS and YESAWICH, JR., JJ., dissent and vote to affirm in an opinion by YESAWICH, JR., J.

Proceeding No. 1—Order reversed, on the law, without costs, adoption petition reinstated and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this court's decision.

Proceeding No. 2—Order reversed, on the law, without costs, and custody petition dismissed.