■ In the Matter of BABY GIRL Z. VICKI Z., Respondent; MR. D. et al., Appellants.—In a proceeding pursuant to Domestic Relations Law § 115-b (7) to revoke an extrajudicial consent to adoption on the ground of fraud, the proposed adoptive parents appeal from an order of the Surrogate's Court, Westchester County (Brewster, S.), dated May 25, 1989, which vacated the extrajudicial consent and directed the immediate return of the child to the birth mother.

Ordered that the order is reversed, without costs or disbursements, and the proceeding is dismissed.

The subject of the instant proceeding is a 10-month-old baby girl who has, since her birth, lived with her prospective adoptive parents in Westchester County. The petitioner is the child's birth mother, who is 25 years old and a devout Lutheran. The prospective adoptive mother is a Catholic while the prospective adoptive father is a nonobservant Jew.

Although the birth mother initially wanted her child to be raised as a Lutheran, she had indicated that it would be acceptable for the child to be raised in the Catholic faith. The birth mother expressed concern as to the religion in which the child was to be raised, but not as to the religious heritages of the prospective adoptive parents.

Arrangements for a private placement adoption by the Westchester couple were made and, prior to the child's birth, the birth mother sought additional assurances that the child would be raised as a Christian. Her attorney, after speaking with the attorney for the proposed adoptive parents, assured her that the child was to be raised as a Catholic in a Christian home. The child was born in Mt. Kisco on November 17, 1988, and, two days later, the birth mother executed an extrajudi-

cial consent to adoption pursuant to Domestic Relations Law § 115-b. The infant was then given into the care of the prospective adoptive parents.

When the birth mother appeared in court on January 9, 1989 to acknowledge her consent to the adoption, she learned for the first time that the prospective adoptive father was not Christian. In March 1989 she commenced this proceeding to revoke her extrajudicial consent alleging, *inter alia,* that certain participants in the adoption procedure had fraudulently concealed the adoptive father's religion from her.

At the trial, the birth mother testified that her attorney, the adoptive parents' attorney, and a relative of the adoptive mother had repeatedly told her that the adoptive father was Catholic. The trial court implicitly discounted her claims that specific misrepresentations had been made concerning the adoptive father's religion. However, the court vacated the extrajudicial consent upon the grounds that the participants in the adoption were aware of the importance of the Christian religion to the mother and that the failure to specifically divulge the adoptive father's religion constituted fraudulent concealment. We disagree and reverse.

Domestic Relations Law § 115-b, which was enacted to bring finality and certainty to adoption proceedings *(see, Matter of Sarah K.,* 66 NY2d 223, 233-234, *cert denied sub nom. Kosher v Stamatis,* 475 US 1108; *Matter of Ricky AA.,* 146 AD2d 433) specifies that an extrajudicial consent, which is one not executed or acknowledged before a Judge or Surrogate, shall become irrevocable 45 days after its execution, unless written notice of revocation is received by the court within that period *(see,* Domestic Relations Law § 115-b [3]).

Such statute does not, however, bar actions or proceedings for fraud, duress or coercion in the execution or inducement of an adoption consent *(see,* Domestic Relations Law § 115-b [7]; *Matter of Rickey AA., supra; Matter of Sandra G.,* 141 AD2d 821, 822). Silence may constitute a fraudulent misrepresentation where a party conceals a material fact which he is in good faith bound to disclose *(see, Tahini Invs. v Bobrowsky,* 99 AD2d 489).

We find that the credible evidence adduced at trial supports a conclusion that the material issue herein was the religion in which the child was to be raised and not the religious heritage of the adoptive father. Moreover, it is uncontroverted that the birth mother declined an opportunity to meet with the prospective adoptive parents to further evaluate their suitability,

that the child has been baptized in the Catholic faith, and there has been no recanting of the commitment to raise the child as a Christian *(cf., Matter of Sohn,* 133 Misc 2d 743).

Under these circumstances, it cannot be said that the failure of certain of the participants to provide information beyond the birth mother's specific inquiries or to volunteer the adoptive father's religious heritage supports a finding of fraudulent concealment. Mollen, P. J., Thompson, Kunzeman and Spatt, JJ., concur.